## TODD *vs.* FAMBRO.

1. On the question of what deduction if any should be made from the agreed purchase money of land, by reason of less of the tract being cleared than was represented to be by the vendor, the value of the land in its actual state (uncleared) as compared with what its value would be if it was cleared, is pertinent evidence.

2. What custom or patronage a mill had at some indeterminate time after a sale (the nearness or remoteness of the time not being shown), may be rejected when offered as evidence to prove that the custom when the sale took place was less than it was represented to be. Misrepresentation as to the custom of a mill being pleaded as ground for rescision, and without the averment of any damages therefrom, that misrepresentation is not in the case on the question of partial failure of consideration. And for such misrepresentation to be good cause for rescision, the mill must have been a main inducement to the purchase of the premises.

3. In negotiating for the purchase of land, if the buyer tells the seller he has looked at the premises and is satisfied with them, and if, nevertheless, he intends not to rely upon his own judgment, but depends on the seller's representations as to the number of acres cleared, he must make this known at the time, or before concluding the contract. If he fails to do so, what the seller says as to the number of acres cleared will be immaterial, whether regarded as matter of fact or matter of opinion, but more especially if the jury believe it to be matter of opinion only

4. When the defendant by his pleadings urges two sorts of relief, one a deduction from his debt by reason of a partial failure of consideration, and the other a rescision of the contract, a request to charge the jury which enumerates certain facts and adds that they, if proved, will entitle him to relief without specifying what relief, is too general, if the facts referred to go to a partial failure of consideration, and not to the right to rescind. Guided by so broad a charge, the jury might understand it as applying to the latter defense, its terms not restricting it to the former. The court is not obliged to heed a request which is loose or uncertain.

Vendor and purchaser. Evidence. Rescision. Charge of Court. Before Judge UNDERWOOD. Whitfield Superior Court. April Term, 1878.

Fambro brought complaint against Todd on two notes, one for $2,000.00, dated December, 25, 1874, and due December 25, 1875 ; the other for the same amount, bearing the same date, and due December 25, 1876, both bearing interest from date at 10 per cent. per annum.

The defendant pleaded, at the trial term, partial failure of consideration, and that the notes were fraudulently procured from him, alleging the following facts : The notes were given for a tract of land containing nine hundred and fifty acres. The plaintiff represented to defendant, before and at the time of the making of the trade, that two hundred and fifty acres of said tract were cleared. After the purchase, defendant discovered that there were not more than one hundred and fifty acres cleared. It cost him $5.00 per acre, or more, to clear the land, and hence he has been damaged $500.00. Were it not for these fraudulent representations, he would not have purchased. Plaintiff also made false and fraudulent representations in regard to the quality of the land, saying that it was very productive and rich, and constituted one of the best farms in north Georgia, when, on the contrary, it was a fourth-rate farm, and the land not of such quality as represented.

The plaintiff also made misrepresentations as to the value of the mill on said farm, to the effect that the custom was

exceedingly good, that defendant would have more custom than he needed, thus deceiving him, as the mill has a very poor custom. Defendant has offered, and does offer, to rescind the contract, and asks that the sale be set aside.

The evidence for the defendant presented the following facts: The defendant, before purchasing, went over about two hundred acres of plaintiff's farm, most of it woodland. He passed over a small portion of the cleared land, the best on the place. He regarded it as a good farm, though he did not examine it with a view to purchasing. He wrote to plaintiff that he wished to purchase, but received no response. Subsequently he saw plaintiff in Calhoun's office, in Atlanta, and there the trade was made. Then plaintiff made the representations set forth forth in the pleas, and defendant relying upon the same, agreed to give $6,000.00. In fact, there were not more than seventy-eight acres of well cleared land, and the farm was in a very bad state for cultivation. The statement as to the custom of the mill was untrue. The creek on one side and the river on the other, prevented the customers from coming to the mill even if they desired to do so. It was worth $5.00 per acre to clear the land needed for cultivation. There were one hundred acres less land cleared than represented. Defendant wrote to plaintiff that he would pay the notes if time was given him, but as plaintiff had refused to accommodate him, he desired to avail himself of his defense. If he had the money he would pay the debt rather than go to law. He did offer to give the place back and lose all he had expended on it, which was about $3,000.00, and the amount already paid on the purchase, $2,000.00, if plaintiff would rescind.

Plaintiff testified to the following facts: Defendant came to plaintiff's house in Upson county and told him that he had come to buy his farm in Whitfield, if they could agree upon the payments. His price was $6,000.00, which defendant knew before he came. Plaintiff made no statement as to the number of acres of cleared land, or as to its quality. Defendant said that he had looked at the

land and was satisfied with it. Plaintiff did say that the mill had a good run of custom when he lived there, but made no statement as to the profits thereof. They agreed upon the time payments were to be made, and the trade was closed.

Two letters were introduced from defendant to plaintiff, one dated December 19, 1875, and the other February 19, 1878. They contained appeals and arguments for time, but the defense now set up was not intimated.

The jury found for the plaintiff the full amount of the notes sued on.

The defendant moved for a new trial upon the following grounds:

1. Because the verdict was contrary to law and to evidence.

2. Because the court refused to charge the jury as follows: "If you believe from the evidence that defendant relied on the statement of the plaintiff as to the quantity of cleared land, and that this statement was one of the inducements held out by plaintiff to cause the defendant to make the purchase, and he did so make the purchase, then the defendant would be entitled to relief if he has been damaged, the question of damages being for you to decide— any material fact misrepresented by plaintiff and on which defendant acted to his injury, reposing confidence in the plaintiff's statement, and by which he has been damaged, will entitle him to relief."

3. Because the court allowed the witness Jesse Fincher, over defendant's objection, to answer the question, "Was the land as valuable in the woods as if cleared?" his response being that it was worth as much, if not more.

4. Because the court refused to permit the defendant to answer the question as to the custom of the mill when he first took possession.

5. Because the court charged, "that if the jury believed the statement of plaintiff as to the number of acres of cleared land, was merely a matter of opinion, then the de-

fendant would not be entitled to have a deduction from the amount sued for on account of that representation."

The motion was overruled and defendant excepted.

HERNDON & HUMPHREYS; JOHNSON & McCAMY, for plaintiff in error.

W. K. MOORE, for defendant.

BLECKLEY, Justice.

1. The necessary expense of clearing land is not the sole criterion in estimating damages resulting from a misrepresentation as to its being already cleared at the time of a sale of the premises. The value of the land in its actual condition is pertinent evidence; for that value is what the purchaser gets for his money. If by reason of the timber which the land has upon it, and which is removed in clearing; or if by reason of the scarcity of woodlands in the neighborhood, or for other cause, the identical land in question happens to be as valuable uncleared as it would be if cleared, surely the purchaser is damaged less by the misrepresentation than he would be damaged if this equality of values did not exist. Indeed, in a clear case of such equality, it is difficult to see how he would be damaged at all, unless he purchased for some special purpose connected with the particular site or location, requiring cleared land to effectuate it, and unless that purpose was made known to the vendor at or before the making of the contract. Even then, the value of the land in its actual condition would, we conceive, be one of the elements to be regarded in fixing the amount of the damages. There was no error in admitting evidence on this point. The question propounded to the witness was not objected to as leading. It was the answer which was objected to, not the question.

2. What length of time elapsed between the purchase and the act of taking possession was not shown. Without some light on this interval, the custom or patronage of the

mill when possession was first taken by the purchaser, could well be rejected as evidence tending to prove the falsehood of the vendor's representations concerning the custom or patronage at the time of sale. Besides, it is to be observed that while the plea of partial failure of consideration alleges damage by reason of misrepresentation as to the cleared land, it does not aver any damage whatever from the mis-representation touching the mill. The latter misrepresentation is, therefore, not in the case on this plea, but only on the equitable matter of rescision ; and to be available for rescision, there would have to be evidence that the mill was a main inducement to the purchaser, which evidence is wholly wanting. The consequence is, that even if there was error in rejecting the offered testimony in respect to this custom or patronage when possession was first taken, this error, in view of the pleadings and the shortness of proof, was not sufficiently material to call for a new trial.

3. In looking at the substantial merits of the case, as well as at the charge of the court touching the vendor's representations as to the quantity of cleared land, the state of the testimony must be considered. The defendant testifies that he looked at a part of the premises, chiefly where the land was uncleared. The plaintiff testifies that in the first overtures of purchase, the defendant told him he had looked at the land and was satisfied. This conversation occurred in Upson county where the plaintiff resided, and where the defendant sought him for the express purpose of negotiating for the property. The defendant does not deny that he then and there told the plaintiff that he had looked at the land and was satisfied, nor does he intimate that he informed the plaintiff that his inspection was limited in fact to a part of the premises. The trade was afterwards consummated in Atlanta, and it was there that the defendant, according to his own testimony, was deceived and misled by the plaintiff's misrepresentation as to the number of acres cleared. In Upson, the plaintiff made no representation on the subject, but the defendant, in that inter-

view, used language calculated to produce the impression that he was trading on his own judgment; for he told the plaintiff that he had seen the land and was satisfied with it. This statement, so far as appears, was left to stand; no modification of it is hinted. Now, under these circumstances, if he intended not to rely on his own judgment when the contract was closed in Atlanta. but to depend on the plaintiff's representations in respect to the number of acres cleared, he ought to have said as much before the transaction was concluded. He should have erased the impression which his words used in Upson were likely to produce, and substituted another and more correct impression on the plaintiff's mind. As he failed to do so, the representations complained of, whether viewed as a matter of fact or matter of opinion, were immaterial. Certainly they were not cause for reducing the debt, (and this is enough to uphold the charge of the court), if the jury believed them matter of opinion only ; and every one knows that in the practical affairs of life, such expressions very often impart nothing beyond conjecture or a loose mental estimate.

4. The request to charge was ambiguous as to the nature of the relief which would follow the enumerated facts, and the pleas of the defendant urged both legal and equitable relief—to-wit: partial cancellation of the debt because of partial failure of consideration, and a rescision of the contract, that is, total cancellation of the debt. So loose a charge might have misled the jury. The court is not obliged to heed a request which is wanting in proper certainty. If the instructions had been given as requested, the jury might have chosen between the two modes of relief, whereas the true law would give them no choice but confine them to the former.

Judgment affirmed.